**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GUILLERMO TORRES,

                    Plaintiff,                                **ORDER**

                                                          CV 14-774 (ADS) (AKT)

       - against -

DEMATTEO SALVAGE CO. INC., JOSEPH
DEMATTEO, AMALIA DEMATTEO and
CARMINE DEMATTEO,

                 Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff Guillermo Torres ("Plaintiff") brings this action against his former employer, Defendant DeMatteo Salvage Co., Inc. ("DeMatteo Salvage"), and the company's shareholders, Defendants Joseph DeMatteo, Amalia DeMatteo, and Carmine DeMatteo (collectively, "Defendants"), alleging claims of retaliatory discharge under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105 (the "STAA"). *See generally* Complaint ("Compl.") [DE 1]. Presently before the Court is Defendants' letter motion to reopen discovery to disclose Timothy Tighe as an expert witness. *See* Defendants.' Letter Motion ("Defs.' Mot.") [DE 46]. Plaintiff opposes the application. *See* Plaintiff's Opposition ("Pl.'s. Opp'n") [DE 47]. For the reasons explained in this Order, Defendants' motion is GRANTED.

**II.    BACKGROUND**

Plaintiff commenced this action on February 5, 2014. *See generally* Compl. According to the Complaint, Plaintiff was employed as a commercial truck driver for DeMatteo Salvage from to 2006 to December 2012. *See id.* ¶ 14. Plaintiff alleges that, throughout his employment,

1

"Defendants regularly required him to operate vehicles that had defects in violation of federal safety regulations." *Id.* ¶ 18. Plaintiff asserts that he repeatedly "questioned the roadworthiness of various trucks that he was assigned to drive" and "regularly filed reports regarding defective conditions of Defendants' trucks." *Id.* ¶¶ 17, 20. In response, Defendants allegedly "criticized Plaintiff's work without valid basis or justification" whenever he complained about the defective conditions of the trucks. *Id.* ¶ 22. According to Plaintiff, Defendants' failure to heed his complaints led to two incidents during his employment. First, around February 2008, Plaintiff informed Joseph DeMatteo that the brakes on one of the trucks were defective and required repair. *Id.* ¶ 23. DeMatteo allegedly "disregarded Plaintiff's complaint and ordered him to operate the truck." *Id.* Later that day, while operating the truck in question, Plaintiff struck another vehicle from behind when he was "unable to bring the truck to a full and complete stop." *Id.* ¶ 24. The second incident occurred around May 2010. Plaintiff was cited by the New York State Department of Transportation for driving a truck with a "defective brake violation" and "a missing chain to the trailer box." *Id.* ¶ 26.

Around December 2012, Plaintiff again complained to Joseph DeMatteo about the defective condition of one of the trucks. *Id.* ¶ 27. Plaintiff refused to operate the vehicle until it was "in safe operating condition." *Id*. Plaintiff alleges that he was "immediately discharged" upon his refusal to drive the truck. *Id.* ¶¶ 27, 30. Plaintiff asserts that his refusal to drive the truck was a protected activity under the STAA because (1) the truck's defects violated federal safety regulations, and (2) "Plaintiff had an objectively reasonable apprehension of serious injury to himself or the public because of the vehicle's hazardous safety condition." *Id.* ¶¶ 28-29, 33. Plaintiff further alleges that his filing of complaints related to the defective conditions of the

truck fleet and his refusal to drive the particular truck in December 2012 were "contributing factor[s]" to Defendants' decision to terminate his employment. *Id.* ¶¶ 30, 34-35.

On March 20, 2015, the parties' filed their proposed Joint Pre-Trial Order ("JPTO") on ECF. *See* DE 43. The JPTO identifies, as relevant to the instant motion, four expert witnesses on Defendants' witness list: (1) Tim Tighe, "Expert Re Maintenance of Fleet Vehicles and necessary repairs;" (2) Lawrence Monaco, "Motor Vehicle Property Damage Expert;" (3) Andrew Mulrain, "Expert witness retired police officer[,] Police Motor Carrier Safety Checks;" and (4) Tony Caiazza, "Expert of All Systems Brake Services." *See* JPTO ¶ 7(B). During the Pre-Trial Conference, Plaintiff's counsel objected to Defendants' inclusion of these expert witnesses on the grounds that Defendants had never served any expert reports or expert disclosures pursuant to Fed. R. Civ. P. 26. *See* DE 45 ¶ 2. The Court informed Defendants' counsel that, under these circumstances, "his only avenue to request relief is a motion seeking to reopen discovery" if he can establish "good cause" for the delay, as that term is defined in Second Circuit case law. *Id.* Defendants thereafter filed the instant motion to reopen discovery solely to disclose Timothy Tighe as an expert witness. *See generally* Defs.' Mot.[1]

Defendants request that discovery be reopened based on their late disclosed expert Tighe's determination that a photograph of one of Defendants' vehicles depicts damage caused by "intentional vandalism" to the vehicle rather than "improper maintenance." *Id.* at 2; *see* Affidavit of Timothy Tighe ("Tighe Aff."), annexed to Defs.' Mot. as Ex. D. The photograph, identified as P127 ("the P127 Photograph"), is one of 57 photographs which were admitted

---

[1] Defendants state in their motion that they have consented to strike the other three proposed experts – Lawrence Monaco, Andrew Mulrain, and Tony Caiazza – from their witness list in the JPTO. *See* Defs.' Mot. at 1. Defendants' application is therefore limited to producing Timothy Tighe as an expert witness. *See id.*

3

during Plaintiff's deposition on February 3, 2015 and is included in Plaintiff's exhibit list for trial. Defs.' Mot. at 1-2; *see* JPTO ¶ 9; *see also* Photograph P127, annexed to Defs.' Mot. As Ex. C. Plaintiff testified during his deposition that he took all of the photographs (including the P127 Photograph) prior to his termination in order to document the damage to Defendants' vehicles and to show the damage to Joseph DeMatteo. *See id.* at 1; Excerpts of Plaintiff's Deposition Transcript ("Torres Dep. Tr."), annexed to Defs.' Mot. as Ex. A. Plaintiff further testified that P127 depicts a damaged red air hose which connects to the brakes of the vehicle in the photo. *See* Torres Dep. Tr. at 198.

Tighe is a former principal of T&M Fleet Management, Inc. ("T&M"), a company which performed outside repairs on DeMatteo Salvage vehicles between 2006 and 2012. *See* Tighe Affid. ¶ 1.[2] On March 12, 2015, Defendants' counsel emailed Tighe a black-and-white copy of the P127 Photograph. *See* Defs.' Mot. at 2. Defendants' counsel later mailed Tighe a color copy of the photograph, which Tighe received on March 14, 2015. *See id.* Defendants' counsel states that he sent Tighe the P127 Photograph so that Tighe could review his invoices and determine whether T&M ever repaired the defects purportedly shown in the photo. *See id.* Defendants' counsel spoke with Tighe on March 16, 2015, at which time Tighe "stated unequivocally and conclusively that the purported defects depicted in the [P127 Photograph] could not possibly have been caused by anything other than the intentional vandalism of th[e] red hose by an individual who would be required to expose the red brake hose and kink that hose with a tool

---

[2] Tighe further asserts in his affidavit that he is certified by the New York State Motor Truck Association as a "Heavy Advanced Break Systems" and by the New York State Department of Motor Vehicles as an "Inspector of Heavy Commercial Vehicles," and that he is an expert "in the installation, maintenance, repair, and calibration of air breaks on heavy commercial vehicles." Tighe Aff. ¶ 1.

such as needlenose plyers." *Id.* (citing Tighe Aff.). Tighe reiterates this view in his affidavit, as follows:

> 2. Immediately upon viewing the color photo described above, it became obvious to me that the purported damage which appears on the red polypropylene break hose in the said photograph could not have possibly been caused by anything other than the intentional act of an individual who would have had to remove the protective covering installed over that red hose, expose the hose, and then crimp same with a tool not normally utilized to work on break systems, such as a pair of needlenose pliers or other similar crimping tool.
>
> 3. The red air line depicted in that photograph (P. 127) is covered by a safety sleeve designed to protect it from any roadway debris which may be deflected into the wheel wells during operation. The hose itself is installed and affixed to the break system in a manner specifically designed to prevent that hose from moving during operation of the vehicle. The red hose, the black safety sleeve and the fittings of that hose are all designed to tolerate significant trauma and, given the permanent stationary installation, that hose could not possibly kink. Moreover, the presence of two kinks in that hose approximately 18 to 24 inches apart conclusively demonstrates to me, as a certified Heavy Advanced Break Systems technician that the kinks contained in the hose depicted in Exhibit "P127" could only have been made by the intentional act by a third party.

Tighe Aff. ¶¶ 2-3.

## III. LEGAL STANDARD

Pursuant to Rule 26(a)(1)(A), a party, without awaiting a discovery request, must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims and defenses." Fed. R. Civ. P. 26(a)(1)(A). In addition to these Initial Disclosures, a party must disclose to the identity of any expert witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Fed. R. Civ. P. 26(a)(2)(A). A party's expert disclosure must be accompanied by a written report prepared by the expert witness which contains, *inter*

5

*alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

"[E]ven if a party fails to adhere strictly to the disclosure requirements of Rule 26, imposing the sanction of precluding expert testimony is not required." *Harkabi v. SanDisk Corp.*, No. 08-CV-8203, 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012); *accord Lutes v. Kawasaki Motors Corp., USA*, No. 10-CV-1549, 2015 WL 1395898, at *2 (D. Conn. Mar. 25, 2015). Exclusion of expert testimony is "a drastic remedy" and courts have recognized that "'precluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'" *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003)) (alteration omitted); *see, e.g.*, *Harkabi*, 2012 WL 2574717, at *4; *S.W. v. City of New York*, No. 09-CV-1777, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011); *Lab Crafters, Inc. v. Flow Safe, Inc.*, No. 03-CV-4025, 2007 WL 7034303, at *2 (E.D.N.Y. Oct. 26, 2007) ("Courts must be mindful since 'exclusion of expert testimony is a drastic remedy.'") (quoting *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-5587, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002)) (internal alteration and quotation marks omitted); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-CV-11295, 2003 WL 22471909, at *1 (S.D.N.Y. Oct. 31, 2003) (quoting *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y. 1998)). Thus, the exclusion of expert testimony "should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Giordano v. PGT Indus., Inc.*, No. 04-CV-

9246, 2007 WL 4233002, at *4 n.2 (S.D.N.Y. Nov. 30, 2007) (quoting *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)) (quotation marks omitted).

The decision whether to reopen discovery is within a district court's discretion. *Krawec v. Kiewit Constructors Inc.*, No. 11-CV-123, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013); *see Wingates, LLC v. Commonwealth Ins. Co. of Am.*, No. 14- CV-2119, 2015 WL 5692303, at *3 (2d Cir. Sept. 29, 2015) (summary order) (finding no abuse of discretion in the district court's "refus[al] to allow [the plaintiffs] to reopen discovery for the purposes of disclosing an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)"); *see generally Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (stating that a district court has "broad discretion to direct and manage the pre-trial discovery process."). "As a general rule, discovery should only be re-opened for good cause, depending on the diligence of the moving party." *Krawec*, 2013 WL 1104414, at *8 (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)); *see, e.g.*, *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) ("In deciding whether to reopen discovery, courts consider whether good cause exists.") (citing *Gray v. Town of Darien*, 927 F.2d 69 (2d Cir. 1991)); *see Marshall v. Starbucks Corp.*, No. 11-CV-02521, 2013 WL 123763, at *2 (S.D.N.Y. Jan. 8, 2013) (same). Courts consider the following six factors when analyzing a request to reopen discovery:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

*Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. 07-CV-5315, 2010 WL 4038765, at *6 (E.D.N.Y. Sept. 30, 2010) (quoting *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-

7

776, 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008)); *see, e.g.*, *Krawec*, 2013 WL 1104414, at *8; *Marshall*, 2013 WL 123763, at *2; *Bakalar*, 851 F. Supp. 2d at 493; *Spencer v. Int'l Shoppes, Inc.*, No. 06-CV-2637, 2011 WL 3625582, at *2 (E.D.N.Y. Aug. 16, 2011). "'A party seeking to reopen discovery bears the burden of establishing good cause[.]" *Thieriot*, 2010 WL 4038765, at *6 (quoting *Durakovic v. Bldg. Serv. 32B–J Pension Fund*, 642 F. Supp. 2d 146, 155 (E.D.N.Y. 2009)).

**IV. DISCUSSION**

Reciting the six-factor test from *Spencer* and other cases, Defendants contend that they have established good cause for reopening discovery. *See* Defs.' Mot. at 2 (citing *Spencer*, 2011 WL 3625582, at *2).[3] Each of these factors is addressed below.

**A. Whether Trial Is Imminent**

The trial of this matter is not imminent. Although discovery closed on February 16, 2015, no trial date has been set. To that extent, the first factor favors Defendants. *Thieriot*, 2010 WL 4038765, at *6.

**B. Whether Plaintiff Opposes the Motion to Reopen Discovery**

Plaintiff opposes Defendants' motion, asserting that Defendants "have failed to satisfy the very high burden of establishing good cause to reopen discovery." Pl.'s Opp'n at 1. Defendants argue that Plaintiff's opposition "should be disregarded" because Tighe will provide expert testimony regarding an exhibit which has been stipulated into evidence and is included in the list of exhibits Plaintiff intends to introduce at trial. Defs.' Mot. at 2 (citing JPTO ¶ 9).

---

[3] Defendants mistakenly contend in their motion that the fifth factor in *Spencer* is whether "plaintiff will require any significant discovery if the court permits reopening discovery for the limited purpose sought herein" rather than the foreseeability of additional discovery. Defs.' Mot. at 3. The Court will address Defendants' contentions under their erroneous fifth factor in its discussion of the potential prejudice to Plaintiff if discovery were reopened.

8

However, the fact that Plaintiff may introduce the P127 Photograph at trial has no bearing on the validity of his opposition to Defendants' delayed effort to disclose an expert witness. Accordingly, because Plaintiff opposes the motion to reopen discovery, the second factor weighs against the Defendants. *See Thieriot*, 2010 WL 4038765, at *6.

### C. Prejudice to Plaintiff

Defendants argue that Plaintiff "will suffer no prejudice" if discovery is reopened because little additional discovery is needed and, in any event, Defendants have agreed to provide Plaintiff "with any discovery which may be reasonably required if the instant application is granted." Defs.' Mot. at 2-3. Specifically, Defendants will make Tighe available for "deposition on written interrogatories or by oral questions" and will "pay any stenographic costs" associated with an oral deposition. *Id.* at 2. Plaintiff counters that he "will suffer great prejudice if discovery is reopened," since he "would not only have to expend time and expense deposing [Tighe]," but he would also need "to hire his own expert witness, who Defendants will then seek to depose." Pl.'s Opp'n at 3. "Resolution of this case will therefore be delayed significantly," according to Plaintiff. *Id.*

The Court agrees that allowing Defendants to disclose Tighe as an expert will cause some prejudice to Plaintiff. "However, courts in the Second Circuit addressing this issue 'have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial.'" *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 11-CV-715, 2013 WL 5771166, at *6 (D. Conn. Oct. 24, 2013) (citing, *e.g.*, *Lab Crafters*, 2007 WL 7034303, at *8); *see Liberty Mut. Fire Ins. Co. v. Omega Flex, Inc.*, No. 13-CV-203, 2013 WL 6047203, at *3 (D. Conn. Nov. 14, 2013) (same); *Mahoney v. Keyspan Corp.*, No. 04-CV-0554, 2007 WL 1651853, at *2 (E.D.N.Y. June 6, 2007) (holding that "there is

9

minimal prejudice to plaintiff since there is sufficient time to allow plaintiff to depose Dr. Zaumeyer and submit a rebuttal report if plaintiff wishes"); *Cartier, Inc.*, 2003 WL 22471909, at *2 ("Any potential prejudice to defendants is cured by allowing them to depose Dr. Litzman before trial if they believe it is necessary.") (citing *RMED Int'l*, 2002 WL 31780188, at *4). Indeed, Defendants state that they are willing to produce Tighe for a deposition and to pay for the stenographic costs related to that deposition. *See* Defs.' Mot. at 2. Moreover, because a trial date has not been set, Plaintiff will have sufficient time to depose Tighe and to hire his own rebuttal expert(s) should he wish to do so. *Giordano*, 2007 WL 4233002, at *4, n.2; *see Mahoney*, 2007 WL 1651853, at *2 ("Although defendant's disclosure of its expert report was well past the discovery deadline here, there is ample time before trial to cure any prejudice plaintiff would otherwise suffer."); *see also Liberty Mut.*, 2013 WL 6047203, at *3 ("Any prejudice defendant may suffer as a result of the late disclosure may be further mitigated by requesting an extension of the other expert discovery deadlines."). The Court therefore finds that this factor weighs in favor of Defendants.

### D. Diligence of Defendants in Seeking Discovery and Foreseeability of the Need for Discovery

However, the diligence and foreseeability factors weigh against the Defendants. Defendants did not make any expert disclosures throughout the discovery period which closed on February 16, 2015. Rather, the first time Defendants disclosed Tighe as an expert witness was in the proposed JPTO filed on March 20, 2015. Defendants assert that they acted diligently in adding Tighe to the JPTO once he relayed his opinion concerning the P127 Photograph to Defendants' counsel on March 16, 2015. Defs.' Mot. at 2-3. But this argument misses the critical point that Defendants did not act diligently in seeking out Tighe and his expert opinion prior to the close of discovery. As Plaintiff states in his opposition, Defendants have been in

10

possession of a black-and-white version of the P127 Photograph since August 2013, months before this action was commenced in February 2014. *See* Pl.'s Opp'n at 2. Plaintiff later produced a color version of the photograph to Defendants in July 2014, and it appears that Defendants themselves admitted that photograph as an exhibit during Plaintiff's deposition on February 3, 2015. *See id.* at 1-2, 2 n.1; Defs.' Mot. at 1. Plaintiff testified during his deposition that the P127 Photograph depicted a defective air hose on one of Defendants' vehicles. *See* Torres Dep. Tr. at 198. However, this testimony was no revelation, since Plaintiff had previously produced discovery responses in a "companion" state court action in which he made the same representation. *See* Pl.'s Opp'n at 2 n.2. These responses were served on Defendants' counsel in July and August 2014, months before discovery closed in this case. *See id.* Based on the foregoing factors, it is reasonable to conclude that Defendants should have foreseen the alleged need for expert discovery with respect to the P127 Photograph by August 2014, or a short time thereafter, when Defendants were in possession of both the color P127 Photograph and Plaintiff's discovery responses. Moreover, Defendants were not diligent in obtaining Tighe's expert opinion or in disclosing him as an expert, and they have "offer[ed] no substantive reason why they could not have engaged in the discovery they now seek before the close of discovery." *Thieriot*, 2010 WL 4038765, at *6 (citing *Durakovic*, 642 F. Supp. 2d at 155). Consequently, this factor weighs against the Defendants.

    **E.    Likelihood that Discovery Will Lead to Relevant Evidence**

The final factor to be considered is whether the requested discovery is likely to lead to relevant evidence. Defendants assert that Tighe's expert opinion that the air hose was damaged by "intentional vandalism" is relevant to the issues of "[b]rake failure and DeMatteo's alleged failure to properly maintain the braking systems on its fleet," which are central to Plaintiff's

11

allegations in this case. Defs.' Mot. at 3. Plaintiff, for his part, does not address relevance in his opposition. *See generally* Pl.'s Opp'n. The Court finds that reopening discovery to permit Defendants to disclose Tighe as an expert is likely to lead to evidence relevant to the claims and defenses in this action, and may have some probative value in assessing the credibility of Plaintiff's allegations. *See generally Exo-Pro, Inc. v. Seirus Innovative Accessories*, *Inc.*, No. CV 05-3629, 2008 WL 4878513, at *3 (E.D.N.Y. Feb. 19, 2008). Accordingly, the Court finds that this factor weighs in favor of Defendants.

### F. Balancing the Factors

Having considered the relevant factors, the Court finds that discovery should be reopened for a limited purpose. Although Defendants were not diligent in disclosing Tighe, a trial date has not been set and "[t]he only possible prejudice to [Plaintiff] would be the cost and delay required to depose an . . . expert witness." *Sci. Components Corp.*, 2008 WL 4911440, at *5. "[S]uch prejudice [does] not outweigh the other factors," including the likelihood the proposed discovery would lead to relevant evidence. *Id.* Moreover, any prejudice to Plaintiff is mitigated by the fact that Plaintiff will be permitted to depose Tighe at Defendants' expense. *See Pagliaro v. Stevens Transp., Inc.*, No. 10-CV-268, 2011 WL 2671567, at *1 (S.D.N.Y. July 6, 2011) ("Courts in this Circuit faced with situations where a party has clearly erred in relation to their expert report but would be highly prejudiced by the exclusion of that expert's testimony have held that the appropriate solution is to allow the responsible party to cure the error, but to require that party to bear any additional costs incurred by their opponent as a result."); *see also Associated Elec. Gas*, 2013 WL 5771166, at *4 ("The prejudice is further mitigated by this Court's prior order which required plaintiffs to bear the cost of these additional [expert] depositions."). Plaintiff may also retain his own expert and submit a rebuttal report if he wishes to do so.

In short, while the Court does not condone Defendants' delay in disclosing Tighe, the circumstances of this case do not warrant the "drastic remedy" of preclusion. *See, e.g.*, *Sci. Components Corp.*, 2008 WL 4911440, at *4; *see generally Valentin v. Cty. of Suffolk*, 342 F. App'x 661, 662 (2d Cir. 2009) (summary order) ("The district court recognized that defendants' late disclosure of their expert violated its expert discovery deadline. But rather than preclude the testimony, the court opted to impose the lesser sanction of requiring defendants to produce their expert for a deposition at Valentin's request. The court's decision to impose a less drastic sanction than preclusion was within its discretion."). Defendants' motion to reopen discovery is therefore granted.

**V.    CONCLUSION**

For the foregoing reasons, Defendants' motion to reopen discovery to disclose Timothy Tighe as an expert witnesses is GRANTED. Plaintiff may conduct a deposition of Tighe, if he wishes to do so, and the reasonable costs of the deposition shall be borne by Defendants. The Court is further directing Defendants' counsel to take all steps necessary to make Tighe available for deposition within 45 days of the date of this Order. Should Plaintiff fail to make Tighe available within this time frame, Defendants will be precluded from presenting Tighe as an expert in this case. Plaintiff will then have 45 days after Tighe's deposition to serve a rebuttal expert report if Plaintiff decides to do so. This process must be completed by June 3, 2016. If Defendants intend to depose Plainitff's rebuttal expert, they must do so by June 21, 2016.

Plaintiff's counsel is directed to notify the Court no later than April 21, 2016 whether or not Plaintiff will proceed with a rebuttal expert. At that time, based upon Plaintiff's response, the Court will set the deadline for filing an Amended Joint Pre-Trial Order.

**SO ORDERED.**

Dated: Central Islip, New York
　　　　March 2, 2016

　　　　　　　　　　　　　　　　　　　　/s/ A. Kathleen Tomlinson
　　　　　　　　　　　　　　　　　　　　A. KATHLEEN TOMLINSON
　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge